COURT OF APPEALS OF VIRGINIA

Present:  Judges Annunziata, Humphreys and McClanahan
Argued at Richmond, Virginia


LARRY DEMETRICE KERSEY

                                              MEMORANDUM OPINION* BY
v.       Record No. 3354-02-2              JUDGE ROBERT J. HUMPHREYS
                                                  FEBRUARY 10, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Beverly W. Snukals, Judge

Craig S. Cooley (Law Office of Craig Stover Cooley, on brief), for
appellant.

Kathleen B. Martin, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Larry Demetrice Kersey appeals his conviction, after a bench trial, for possession of

cocaine (in violation of Code § 18.2-248) and possession of a firearm while in possession of

cocaine (in violation of Code § 18.2-308.4).  Kersey contends the trial court erred in finding the

evidence sufficient, as a matter of law, to support the convictions.  Because we find the evidence

presented below was sufficient to establish that Kersey constructively possessed the cocaine and

the firearm at issue, we affirm.

On appeal of the sufficiency of the evidence, the Court must "review the evidence in the

light most favorable to the Commonwealth, granting to it all reasonable inferences fairly

deducible therefrom."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418

(1987).  "The judgment of a trial court sitting without a jury is entitled to the same weight as a

jury verdict and will not be set aside unless it appears from the evidence that the judgment is

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

plainly wrong or without evidence to support it." Id. The credibility of the witnesses, the weight accorded the testimony, and the inferences to be drawn from proved facts are matters to be determined by the fact finder. See Hunley v. Commonwealth, 30 Va. App. 556, 559, 518 S.E.2d 347, 349 (1999).

It is well settled that "[t]he Commonwealth may prove possession of a controlled substance by showing either actual or constructive possession." Barlow v. Commonwealth, 26 Va. App. 421, 429, 494 S.E.2d 901, 904 (1998). "The principles that govern constructive possession of illegal drugs also apply to constructive possession of a firearm." Grier v. Commonwealth, 35 Va. App. 560, 570, 546 S.E.2d 743, 747 (2001).

To support a conviction based on constructive possession, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control." Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984). "Possession 'need not always be exclusive. The defendant may share it with one or more.'" Archer v. Commonwealth, 26 Va. App. 1, 12, 492 S.E.2d 826, 832 (1997) (quoting Josephs v. Commonwealth, 10 Va. App. 87, 99, 390 S.E.2d 491, 497 (1990) (en banc)).

In terms of proving constructive possession, mere proximity to the contraband is not sufficient to establish the requisite "dominion and control." Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (citations omitted). Similarly, "ownership or occupancy of the premises where the [contraband] is found does not create a presumption of possession." Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 872 (1998). Nonetheless, these factors may be considered in deciding whether an accused possessed the contraband at issue. Id. "Thus, in resolving this issue, the Court must consider 'the totality of the circumstances

disclosed by the evidence.'" <u>Archer</u>, 26 Va. App. at 12, 492 S.E.2d at 832 (quoting <u>Womack v. Commonwealth</u>, 220 Va. 5, 8, 255 S.E.2d 351, 353 (1979)).

> Circumstantial evidence of such possession is sufficient to support a conviction, provided it excludes every reasonable hypothesis of innocence. <u>See</u> <u>Tucker v. Commonwealth</u>, 18 Va. App. 141, 143, 442 S.E.2d 419, 420 (1994). However, "[t]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." <u>Hamilton v. Commonwealth</u>, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993). Whether an alternative hypothesis of innocence is reasonable is a question of fact, <u>see</u> <u>Cantrell v. Commonwealth</u>, 7 Va. App. 269, 290, 373 S.E.2d 328, 339 (1988), and, therefore, is binding on appeal unless plainly wrong. <u>See</u> <u>Martin</u>, 4 Va. App. at 443, 358 S.E.2d at 418.

<u>Id.</u> at 12-13, 492 S.E.2d at 832. "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." <u>Commonwealth v. Hudson</u>, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003) (citation omitted).

In the case at bar, the evidence proved that Kersey was at the apartment, located at 1016 North 20th Street, along with approximately 13 or 14 other people, when a police "[r]aid team or entry team" entered the apartment to execute a search warrant. When police entered, they "loud[ly]" announced their presence. Less than 15 seconds later, Officers Edward Disse and Todd Bevington found Kersey hiding in the closet of an upstairs bedroom. Kersey was "crunched" or "wedged" into the closet, sitting on a "blue, big storage thing," holding his hands up. No one else was in the room. As the officers "removed" Kersey from the closet, they observed "both of his left and front right pockets were pulled out from his pants." "They were turned inside out."

Upon searching the inside of the closet, the officers found a blue basket, containing clothes, on the floor. A blue jean jacket was lying near the top of the basket of clothes. "[A]

small caliber firearm" was lying on top of the jacket and a bag of marijuana was lying "about ten inches to the left" of the firearm. The officers observed another basket of clothes and a large, "black or blue" "Tupperware container" located directly next to the blue clothing basket. Near those containers, the officers found two condoms. One of the condoms was "dark colored." One officer testified that "[i]n between the condom [sic], *or right on top of it*, [was] a bag of cocaine."[1] (Emphasis added). Another officer testified that the "dark colored condom" was "on top of" the bag of cocaine. There was no dispute that Kersey had been found sitting within "arms reach" of both the gun and the cocaine.

After the officers placed Kersey under arrest and read him his <u>Miranda</u> rights, Kersey told the officers that he had been walking up the stairwell when the officers entered the apartment. He heard "Shanda" yell that someone was coming, so he "jumped into the closet," fearing that someone was coming to hurt him. Kersey admitted that he had two condoms (one "grape condom" and one "latex condom") and a bag of marijuana in his pockets when he entered the closet.[2] Kersey denied that the gun and cocaine were his. Kersey also told officers that he had visited the apartment "everyday for the last week," that he knew the "tenant lov[ed] to

---

[1] The certificate of analysis listed the "drugs" obtained from the closet as "[o]ne (1) plastic bag corner containing a total of nine (9) plastic bag corners, each containing solid material."

[2] Kersey also told officers that he had $105, a cell phone, some phone numbers and a pack of Newport cigarettes in his pockets. Officers found a pack of Newport cigarettes about six inches outside the closet door (or curtain), lying on the floor. Significantly, Officer Disse testified that no drugs (including the bag of marijuana Kersey said he had in his pocket while in the closet) were found on Kersey's person. Thus, it was reasonable for the trial court to assume that the marijuana found in the closet, and near the cocaine and the gun, belonged to Kersey. It was also reasonable for the trial court to assume that Kersey disposed of the marijuana, by pulling it out of his pocket, while in the closet.

smoke cocaine," and that he "smell[ed]" "narcotics" in the apartment every time that he was there.[3]

Considering the totality of this evidence, we do not find that the trial court's determination that Kersey constructively possessed both the gun and the cocaine was plainly wrong. Police found no one but Kersey in the closet or in that particular bedroom. Both the gun and cocaine were found in close proximity to Kersey and both, as reflected by the record, were clearly visible from where Kersey was found sitting. Perhaps more importantly, they were found in very close proximity - in the case of the cocaine, either directly under, or on top of – items that Kersey admitted to having in his pockets when he entered the closet. Moreover, Kersey's front pockets were empty and were turned inside out when police found him hiding in the closet, and police testified that no drugs were found on Kersey's person, including the marijuana Kersey claimed to have had in his pocket while in the closet.

In addition, the trial court did not believe Kersey's contention that he ran into the closet in fear of being harmed. The trial court found instead that because Kersey wasn't "relieved" when he found out it was the police that had entered the apartment, his statement was incredible and "[t]hat is something the [c]ourt can take into consideration." See Johnson v. Commonwealth, 12 Va. App. 150, 153, 402 S.E.2d 502, 504 (1991) ("Flight itself from the scene was some evidence of guilty knowledge.").

As stated above, "[c]ircumstantial evidence is not viewed in isolation. 'While no single piece of evidence may be sufficient, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a

---

[3] Police ultimately found drugs in two rooms of the apartment. They also found "glass tube smoking device[s] containing residue," a plastic cylinder containing a syringe with residue, and two metal spoons, "each with residue," as well as evidence that drugs were being "cooked" in the kitchen.

conclusion.'"'" Hudson, 265 Va. at 514, 578 S.E.2d at 785 (quoting Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991) (citations omitted)).  Thus, the issue upon appellate review is "whether a reasonable [fact finder], upon consideration of all the evidence, could have rejected" Kersey's theories of innocence and found him guilty of the offenses charged, beyond a reasonable doubt.  Id.  The evidence presented here, when viewed as a whole, clearly permitted the trial court to draw the reasonable inference that Kersey was aware of the presence and character of the contraband and that he possessed dominion and control over it.  See Archer, 26 Va. App. at 13-14, 492 S.E.2d at 832 (finding sufficient evidence of constructive possession of a gun where police found both the gun and a knife under a motel room mattress, and the defendant admitted that the knife belonged to him, and had earlier indicated an awareness of the gun's presence in the room); see also Jefferson v. Commonwealth, 14 Va. App. 77, 80, 414 S.E.2d 860, 862 (1992) (finding constructive possession where, in part, cocaine was found in close proximity to two weapons, and both the drugs and the guns were easily accessible to the defendant).  Thus, we find that the evidence sufficiently proved, at the very least, that Kersey was in joint constructive possession of both the gun and the cocaine.

        For these reasons, we affirm Kersey's convictions.

Affirmed.