COURT OF APPEALS OF VIRGINIA


Present: Judges Bray, Frank and Clements
Argued at Chesapeake, Virginia


JARVIS DESHANON BROWN

MEMORANDUM OPINION[*] BY
v.    Record No. 2361-00-1        JUDGE ROBERT P. FRANK
                                   NOVEMBER 6, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Edward W. Hanson, Jr., Judge

Janee D. Joslin (Davis & Pugh, on brief), for
appellant.

Stephen R. McCullough, Assistant Attorney
General (Randolph A. Beales, Acting Attorney
General, on brief), for appellee.


Jarvis Deshanon Brown (appellant) was convicted in a jury

trial of possession with the intent to distribute more than five

pounds of marijuana, in violation of Code § 18.2-248.1. On

appeal, he contends the trial court erred in finding the evidence

sufficient to convict. Finding no error, we affirm the judgment

of the trial court.

BACKGROUND

On April 26, 1999, John Casey, an employee of the Family

Motors car dealership, arrived at work and noticed a package in

the office. When he opened the package, he discovered inside the

---

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

larger package a shrink-wrapped package approximately three feet long that contained a large quantity of marijuana. Two other inner boxes also contained marijuana. The inner packages contained a combined total of over 100 pounds of marijuana. Casey immediately told his manager to call the police.

In examining the outside of the package, Casey noticed that it originated in California. The shipping receipt listed a phone number and a name, Linda Nichols.

Virginia Beach Police Detectives Richard Brereton and Terry Dugan responded to the call. Brereton called the telephone number listed on the shipping receipt. He identified himself as a fictional employee of Family Motors named "Bob" and explained he had received a package that was not for the dealership. No person named "Bob" worked at the dealership. Brereton had several conversations with the person in California, who identified herself as Linda Nichols. Eventually, Nichols told Brereton that an individual named Jarvis Brown would come and claim the package.

Appellant appeared at the dealership that afternoon. He asked for "Bob." Detective Dugan, playing the role of "Bob," walked with appellant to a van where the drugs were stored. Dugan asked appellant if he knew what was in the box. Appellant initially stated "monitors or computers" and then said, "[N]aw, I'm just here to pick it up for Linda."

Dugan told him the box contained marijuana and asked appellant about compensation for his efforts. Appellant denied

-

any knowledge of the marijuana but expressed his willingness to make a telephone call to inquire if "Bob" could be compensated. The detective "slid the box down to a point where [appellant] could put his hands on it." Appellant then placed one hand on each side of the box and, in the words of Dugan, "he took possession of the package." Dugan gave the "take down" signal, and appellant was arrested within seconds of his placing his hands on the package.

After he was arrested and given his <u>Miranda</u> rights, appellant gave the police a statement. He initially stated he was at the dealership to pick up microphones. He then stated that he was there to see "Bob," not to pick up microphones. After some hesitation, he then claimed that he was there to pick up computer monitors, which the car dealership had never sold. Appellant further stated that he did not know what was in the package and that he was there to look at a computer. Appellant said several times that he would like to help the police, but "these guys" would kill him and his family. He also noted that he would find out who "set him up." Finally, he admitted that his friend, Rico, called him and asked him to pick up the package. Appellant stated, "Rico is a drug dealer. He sent me up there to pick up the package. I just didn't think the package was going to be that big."

Appellant denied calling California and said he did not know how anyone at the packaging company knew his name.

-

ANALYSIS

Appellant contends the evidence was not sufficient to prove that he knowingly possessed, either actually or constructively, the marijuana.

When considering the sufficiency of the evidence on appeal in a criminal case, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  "In so doing, we must '"discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom."'"  Norman v. Commonwealth, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (quoting Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954))).  The trial court's judgment will not be set aside unless the judgment is plainly wrong or without evidence to support it.  Josephs v. Commonwealth, 10 Va. App. 87, 99, 390 S.E.2d 491, 497 (1990) (en banc).

Possession of a controlled substance may be actual or constructive.  See Archer v. Commonwealth, 225 Va. 416, 418, 303 S.E.2d 863, 863 (1983).

> To support a conviction based upon
> constructive possession, "the Commonwealth
> must point to evidence of acts, statements,

-

or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control."

Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)).  See Eckhart v. Commonwealth, 222 Va. 447, 450, 281 S.E.2d 853, 855 (1981).

Proof by circumstantial evidence "'is not sufficient . . . if it engenders only a suspicion or even a probability of guilt.'" Littlejohn v. Commonwealth, 24 Va. App. 401, 414, 482 S.E.2d 853, 859 (1997) (quoting Hyde v. Commonwealth, 217 Va. 950, 955, 234 S.E.2d 74, 78 (1977)).  "'"All necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence."'"  Betancourt v. Commonwealth, 26 Va. App. 363, 373, 494 S.E.2d 873, 878 (1998) (quoting Stover v. Commonwealth, 222 Va. 618, 623, 283 S.E.2d 194, 196 (1981) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976))).  "When, from the circumstantial evidence, 'it is just as likely, if not more likely,' that a 'reasonable hypothesis of innocence' explains the accused's conduct, the evidence cannot be said to rise to the level of proof beyond a reasonable doubt."  Littlejohn, 24 Va. App. at 414, 482 S.E.2d at 859 (quoting Haywood v. Commonwealth, 20 Va. App. 562, 567-68, 458 S.E.2d 606, 609 (1995)).  The Commonwealth need not "'exclude every possible theory or surmise,'" but it must exclude

-

those hypotheses "'which flow from the evidence itself.'" Cantrell v. Commonwealth, 7 Va. App. 269, 289-90, 373 S.E.2d 328, 338-39 (1988) (quoting Black v. Commonwealth, 222 Va. 838, 841, 284 S.E.2d 608, 609 (1981)).

Our inquiry, therefore, is whether appellant was aware of the presence and character of the marijuana found in the package and whether he exercised dominion and control over the packaged drugs.

We first examine the information that appellant had concerning the shipment of drugs. Appellant knew the drugs were shipped by Nichols. He was aware of the phone conversation between Brereton and Nichols because he asked for "Bob" when he arrived at the car dealership. The detective had given Nichols the fictitious name of "Bob" when he spoke to her.

From the various phone calls, the detective knew that someone named Jarvis Brown would arrive to pick up the package. While appellant denied any knowledge of the drugs, he volunteered to make a telephone call to inquire if "Bob" would be compensated. The fact finder could properly infer that appellant was in contact with the source of the marijuana.

When appellant was advised that the package contained marijuana, he nevertheless put his hands on each side of the package. He did not retreat or disclaim the package. His actions were consistent with one who went to the dealership intending to pick up the marijuana.

Appellant gave several contradictory explanations for his presence at the dealership.  Initially, he said he was there to pick up a microphone, then a computer monitor.  Ultimately, he said he was sent there by a drug dealer to pick up a package but claimed he was surprised the package was "that big."  The trial court was entitled to infer that he was lying to conceal his guilt.  See Black, 222 Va. at 842, 284 S.E.2d at 610.

Further, appellant expressed concern that if he assisted the police, "these guys" would kill him and his family.  This concern about retaliation belies his claim that he did not know the contents of the package.

From the evidence, the fact finder could conclude that appellant had been in contact with Nichols, who originally shipped the drugs, and that appellant was sent to the dealership to pick up the package.  The fact finder also could infer, since appellant was in a position to discuss compensation with Nichols, he was intimately connected with the drug operation.

While appellant contends he did not exercise dominion and control over the marijuana, the facts do not support his position.  The undercover detective slid the package to where appellant could retrieve it.  Appellant, after being told that the package contained marijuana, placed one hand on each side of the box.  The detective characterized appellant's actions as "[taking] possession of the package."

Possession need not be actual, exclusive, or lengthy in order to support a conviction; instead, the statute criminalizes constructive or joint possession of illegal drugs for any duration.  See Gillis v. Commonwealth, 215 Va. 298, 302, 208 S.E.2d 768, 771 (1974); Josephs, 10 Va. App. at 99, 390 S.E.2d at 497.

The trial court could reasonably infer that, but for appellant's arrest within seconds of his placing his hands on the package, he would have picked up the package and left with it.

Here, the evidence was sufficient beyond a reasonable doubt that appellant was guilty of the offense.  We affirm the judgment of the trial court.

Affirmed.

-